[Cite as *Minaldi v. Nocera Holdings, L.L.C.*, 2026-Ohio-2154.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

ARTHUR MINALDI ET AL.,

Plaintiffs-Appellants,

v.

NOCERA HOLDINGS, LLC ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 MA 0105

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2024 CV 02362

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Scott R. Cochran*, for Plaintiffs-Appellants and

*Atty. T. Scott Kamenitsa, Jr.,* Schmidt Kamenitsa, LLP, for Defendants-Appellees.

Dated: June 8, 2026

**DICKEY, J.**

**{¶1}** Appellants, Arthur Minaldi and Fred D'Amico, appeal from the October 15, 2025 judgment of the Mahoning County Court of Common Pleas adopting the magistrate's decision denying Appellants' motion for summary judgment and granting Appellees', Nocera Holdings, LLC ("Nocera Holdings") and Frank Nocera, cross-motion for summary judgment. This case involves a real estate transaction concerning three parcels. On appeal, Appellants assert the trial court erred in adopting the magistrate's decision. Appellants allege the court erred in construing the listing agreement to extinguish their commission. Appellants also contend that summary judgment was erroneous because the "bona fide" listing exception turns on disputed facts and competing inferences. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

**{¶2}** Appellant Arthur Minaldi is a licensed real estate broker. Appellant Fred D'Amico is Minaldi's agent. Appellee Nocera Holdings is a real estate holding company. Appellee Frank Nocera is the managing member of Nocera Holdings. Nocera Holdings owned the following three parcels of real estate: (1) 62 Carter Circle, Youngstown, Ohio 44512; (2) 66 Carter Circle, Youngstown, Ohio 44512; and (3) 3718 Indian Run Drive, Canfield, Ohio 44406 (collectively the "Properties").

**{¶3}** Nocera Holdings was not actively looking to sell the Properties. However, Frank Nocera was approached by Fred D'Amico who indicated that he had a $1,000,000 total cash buyer for the Properties: (1) 62 Carter Circle, $325,000; (2) 66 Carter Circle, $325,000; and (3) 3718 Indian Run Drive, $350,000. The prospective buyer, Encore Trading & Investments, LLC ("Encore Trading") is a real estate holding company.

**{¶4}** Based upon this representation, Appellees (owners) executed a listing agreement for the Properties with Appellants (real estate brokers) on or about July 1, 2022 (the "Listing Agreement"). The Listing Agreement was prepared by Appellants and provided for Appellants to be paid a 4.5 percent commission (with authority to offer up to 2.5 percent of that amount to a co-broker) from the total sale price of the Properties. Paragraph two of the Listing Agreement outlining Appellants' right to the commission, entitled "Brokerage Fee," explicitly states in its entirety:

Case No. 25 MA 0105

Owner [Nocera Holdings] agrees to pay Broker a brokerage fee of 4.5% of the total sale price or a minimum fee of _____ whichever is greater, plus _____. Owner authorizes Broker to offer 2.5% of the Sale Price for all Co-Broke[r] sales. Any exceptions to this compensation will be disclosed to the Owner in writing. Owner also agrees that the brokerage fee shall be paid if Owner enters into an agreement within six (6) months following the term of this agreement or any extensions thereof to any parties to whom Broker or any cooperating broker has shown the property which results in a sale, lease or exchange of said property. *However, in the event Owner enters into a bona fide Listing Agreement with another Real Estate Broker, this paragraph is null and void*. Owner agrees to refer all prospective Buyers or Brokers who contact the Owner directly.

(Emphasis added). (Exhibit A).

{¶5} Nocera Holdings and Encore Trading proceeded with the proposed transaction for the purchase and sale of the Properties. Title Professionals of Canfield handled the requisite title work and a realtor with Keller Williams Chervenic Realty, Inc. ("Keller Williams") represented Encore Trading. Keller Williams served as a co-broker. As such, Keller Williams would be entitled to a 2.5 percent co-broker commission. Appellants would be entitled to a commission of $20,000 or 2 percent after deduction of the co-broker share.

{¶6} Unfortunately, the transaction became strained after it was quickly discovered that Encore Trading was not able to secure cash funding for the Properties. The situation was very contentious. Robert Roberts, a real estate agent with Mayo & Associates and a childhood friend of Frank Nocera, became involved in the transaction on behalf of Appellees. Roberts simply tried to smooth over relations and ensure the transaction could close as originally planned. However, the transaction fell through and did not close as scheduled. The Listing Agreement between Appellees and Appellants expired on August 31, 2022.

{¶7} Thereafter, Appellees executed a bona fide listing agreement with Robert Roberts and Mayo & Associates for the Properties on or about September 7, 2022 (the

"Bona Fide Listing Agreement"). Appellees were successful in selling the same parcels of real estate (the Properties) to the same prospective buyer (Encore Trading) for the same total purchase price ($1,000,000). This was a cash deal and the transaction closed on or about October 5, 2022.

{¶8} On October 17, 2024, Appellants filed a complaint against Appellees for breach of contract with a jury demand. Appellants alleged that since they procured a purchaser during the course of the original Listing Agreement, Appellees breached the Listing Agreement by ultimately failing to pay Appellants their commission ($20,000). Thus, Appellants sought a commission from the sale of the Properties despite the subsequent execution of the Bona Fide Listing Agreement. Appellants alleged that all contingencies were completely satisfied and the fact that this transaction did not close during the term of the Listing Agreement does not eradicate their entitlement to their commission. On November 18, 2024, Appellees filed an answer.

{¶9} On May 6, 2025, Appellants filed a motion for summary judgment. On May 8, 2025, the parties filed a "Joint Notice of Consent to Magistrate Conducting Jury Trial." On June 4, 2025, Appellees filed a combined memorandum in opposition to Appellants' motion for summary judgment and a cross-motion for summary judgment. On July 9, 2025, Appellants filed a response.

{¶10} On September 24, 2025, the parties filed a "Joint Waiver of Jury Demand." A hearing was held before the magistrate on September 29, 2025. On October 8, 2025, the magistrate issued a decision denying Appellants' motion for summary judgment and granting Appellees' cross-motion for summary judgment. The magistrate agreed with Appellees that no commission was owed to Appellants under the language of the Listing Agreement as drafted by Appellants. Although Appellants requested an extension of time to file objections, they never filed any objections to the magistrate's decision. Appellants allege in their appellate reply brief:

> Counsel reached out to the trial court to inquire about a ruling on the Motion
> for an Extension of Time to file the objections. Counsel was instructed that
> objections had been waived due to the consent to the Magistrate to conduct
> the jury trial and that the Court would not entertain them. This representation
> is not within the record herein.

Case No. 25 MA 0105

(3/31/2026 Appellants' Reply Brief, p. 4).

**{¶11}** As permitted by Civ.R. 53(D)(4)(e)(i), on October 15, 2025, the trial court entered final judgment consistent with the magistrate's decision, noting: "[t]he parties previously unanimously consented to the Magistrate presiding over this matter." (10/15/2025 Judgment Entry, p. 1). Thus, the court adopted the magistrate's decision denying Appellants' motion for summary judgment and granting Appellees' cross-motion for summary judgment. Specifically, the court concluded:

Defendants clearly entered into a Listing Agreement with Mayo & Associates following expiration of Plaintiffs' Listing Agreement. It is a basic tenant of contract construction that a contract is to be strictly construed against the draftsman. Here, Plaintiffs drafted the Listing Agreement which they argue entitles them to the $20,000.00 commission. However, Plaintiffs included language that renders their entitlement to a brokerage fee or commission unenforceable. The term "bona fide Listing Agreement" is not defined by Plaintiffs in the agreement which they drafted. As such, rules of contract construction indicate that an undefined term will be given its ordinary and customary meaning in language. Merriam-Webster Dictionary defines "bona fide" as: "neither specious nor counterfeit; made with earnest intent; and made in good faith without fraud or deceit."

Despite the similarities in the ultimate purchase agreement entered into between Encore Trading & Investments, LLC, and the Defendants, herein, there is nothing to suggest that the original Listing Agreement between the Defendants and Mayo & Associates was anything other than bona fide. Again, despite the similarities between the transactions, the Magistrate has not been provided any evidence upon which to make a finding as a matter of law that the subsequent Listing Agreement was not bona fide and, as such, the language of the Listing Agreement itself drafted by Plaintiffs, excused the Defendants from further performing and defeats Plaintiffs' claim for monetary damages in the form of its commission.

Based upon the foregoing, the Magistrate finds that no genuine issue of material fact exists and Defendants are entitled to judgment upon Plaintiffs' complaint as a matter of law. Construing the evidence most strongly in favor of the Plaintiffs and against the Defendants the Magistrate finds that reasonable minds can come to but one conclusion and that conclusion is adverse to Plaintiffs herein.

Based upon the foregoing, Plaintiffs' Motion for Summary Judgment is overruled. Conversely, Defendants' Cross-Motion for Summary Judgment is sustained and judgment is hereby entered in favor of the Defendants, Nocera Holdings, LLC and Frank Nocera and against the Plaintiffs, Arthur Minaldi and Fred D'Amico upon all claims and allegations contained in Plaintiffs' complaint. Costs are hereby taxed to Plaintiffs.

The Judgment of this trial court is entered accordingly.

IT IS SO ORDERED.

There is no just cause for delay.

(10/15/2025 Judgment Entry, p. 3-4).

{¶12} Appellants filed a timely appeal and raise two assignments of error.

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT COMMITTED PLAIN ERROR BY ADOPTING THE MAGISTRATE'S DECISION GRANTING SUMMARY JUDGMENT TO DEFENDANTS BASED ON THE "NULL AND VOID" CLAUSE, BECAUSE THE LISTING AGREEMENT UNAMBIGUOUSLY EARNED PLAINTIFFS' COMMISSION UPON DEFENDANTS' EXECUTION OF ENFORCEABLE PURCHASE AGREEMENTS DURING THE LISTING TERM, AND THE "NULL AND VOID" CLAUSE – BY ITS TEXT AND STRUCTURE – PERTAINS ONLY TO THE POST-EXPIRATION PERIOD.**

{¶13} In their first assignment of error, Appellants argue the trial court erred in adopting the magistrate's decision denying their motion for summary judgment and granting Appellees' cross-motion for summary judgment. Appellants assert the "null and void" clause in the Listing Agreement cannot extinguish a commission earned during the listing term.

{¶14} Preliminarily, we note that Appellants were not required to file objections to the magistrate's decision based on the facts presented and the record before us.

{¶15} Civ.R. 53(C)(2), "Jury trials before Magistrates," states:

Notwithstanding any other provision of these rules, in jury trials presided over by magistrates, the factual findings of the jury shall be conclusive as in any trial before a judge. All motions presented following the unanimous written consent of the parties, including those under Civ.R. 26, 37, 50, 51, 56 [summary judgment], 59, 60, and 62, shall be heard and decided by the magistrate. No objections shall be entertained to the factual findings of a jury, or to the motion or legal rulings made by the magistrate except on appeal to the appropriate appellate court after entry of a final judgment or final appealable order. The trial judge to whom the matter was originally assigned before the parties consented to trial before a magistrate shall enter judgment consistent with the magistrate's journalized entry pursuant to Civ.R. 58, but shall not otherwise review the magistrate's rulings or a jury's factual findings in a jury trial before a magistrate.

Civ.R. 53(C)(2).

{¶16} The record reveals the parties filed competing Civ.R. 56 motions for summary judgment.

An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any

material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist. 1995).

"[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293, 662 N.E.2d 264. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist. 1997).

The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327, 364 N.E.2d 267.

*Doe v. Skaggs*, 2018-Ohio-5402, ¶ 10-12 (7th Dist.).

**{¶17}** As stated, the parties unanimously consented to the magistrate presiding over this matter. A hearing was held before the magistrate on September 29, 2025. On October 8, 2025, the magistrate issued a decision denying Appellants' motion for summary judgment and granting Appellees' cross-motion for summary judgment. The magistrate agreed with Appellees that no commission was owed to Appellants under the language of the Listing Agreement as drafted by Appellants. On October 15, 2025, the trial court adopted the magistrate's decision denying Appellants' motion for summary judgment and granting Appellees' cross-motion for summary judgment.

**{¶18}** The plain language of the Listing Agreement permitted the entirety of the commission clause to be null and void which extinguished any legal right or recourse relating to it.

**{¶19}** "The general rule is that contracts should be construed so as to give effect to the intention of the parties." *Rucci v. T.C. Quality Homes, Inc.*, 2001-Ohio-3262, *6 (7th Dist.), citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53 (1989). "A fundamental and frequently applied principle of law is that the language of a contract is to be construed strictly against the party who prepared it or selected its language and in favor of the party who took no part in its preparation or in the selection of its language." *Mousie v. Mousie*, 1986 WL 6878, *1 (7th Dist. June 18, 1986).

**{¶20}** Again, the Listing Agreement was prepared by Appellants and presented to Appellees. The Listing Agreement provided for Appellants to be paid a 4.5 percent commission (with authority to offer up to 2.5 percent of that amount to a co-broker) from the total sale price of the Properties. Paragraph two of the Listing Agreement outlining Appellants' right to the commission, entitled "Brokerage Fee," explicitly states in pertinent part:

> Owner [Nocera Holdings] also agrees that the brokerage fee shall be paid if Owner enters into an agreement within six (6) months following the term of this agreement or any extensions thereof to any parties to whom Broker or any cooperating broker has shown the property which results in a sale, lease or exchange of said property. *However, in the event Owner enters into a bona fide Listing Agreement with another Real Estate Broker, this* paragraph *is null and void*. . . .

(Emphasis added). (Exhibit A).

{¶21} Thus, Appellants were only entitled to a commission on the sale of the Properties after the term of the Listing Agreement had expired so long as Appellees did not execute another bona fide listing agreement with another broker following expiration of the parties' exclusive Listing Agreement. The Listing Agreement encompassed the entire paragraph regarding commissions thereby removing Appellants' right to any commission.

{¶22} The record reveals Appellees did execute another bona fide listing agreement with another broker. Again, the transaction between Appellees and Appellants fell through and did not close as scheduled. The Listing Agreement between Appellees and Appellants expired on August 31, 2022. Thereafter, Appellees executed the Bona Fide Listing Agreement with another broker (Robert Roberts and Mayo & Associates) for the Properties on or about September 7, 2022. Appellees were successful in selling the same parcels of real estate (the Properties) to the same prospective buyer (Encore Trading) for the same total purchase price ($1,000,000). This was a cash deal and the transaction closed on or about October 5, 2022.

{¶23} We note that Appellants mainly rely on a 46-year-old decision with zero appellate citing references, *Century 21 Brighton Realty v. Patrinos*, 1980 WL 351466 (7th Dist. Apr. 21, 1980) (Lynch, J., concurs in part, dissents in part), alleging that they are entitled to their commission. Unlike the case sub judice, *Century 21* did not involve a null and void brokerage fee paragraph. Rather, in that case, there was an attempted unilateral material amendment to a contingency clause in a sales contract. *Id.* at * 1. The contract failed in *Century 21* because it lacked a binding quality. *Id*. Appellants' reliance on *Century 21* is misplaced.

{¶24} Based on the facts presented, the trial court properly interpreted the plain language of the Listing Agreement and found that Appellants were not entitled to a commission because Appellees executed the Bona Fide Listing Agreement with another broker (Robert Roberts and Mayo & Associates) for the Properties.

{¶25} Appellants' first assignment of error is without merit.

Case No. 25 MA 0105

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT COMMITTED PLAIN ERROR BY DETERMINING, AS A MATTER OF LAW, THAT DEFENDANTS' LATER LISTING AGREEMENT WITH MAYO & ASSOCIATES WAS "BONA FIDE," WHERE THE TERM IS UNDEFINED AND THE RECORD CONTAINS EVIDENCE AND REASONABLE INFERENCES CREATING AT LEAST A GENUINE ISSUE OF MATERIAL FACT REGARDING WHETHER THAT LATER LISTING WAS USED AS A DEVICE TO AVOID PAYING PLAINTIFFS' EARNED COMMISSION.**

**{¶26}** In their second assignment of error, Appellants contend the trial court erred in determining that Appellees' subsequent listing agreement with Mayo & Associates was "bona fide."

**{¶27}** The Bona Fide Listing Agreement is not an issue of material fact. As stated by the trial court, "[t]he term 'bona fide Listing Agreement' is not defined by [Appellants] in the agreement which they drafted." (10/15/2025 Judgment Entry, p. 3). Black's Law Dictionary defines "bona fide" as: "1. Made in good faith; without fraud or deceit. 2. Sincere; genuine." *Black's Law Dictionary* (12th Ed. 2024).

**{¶28}** There is nothing in the record establishing any fraud or deceit. There is no dispute that Nocera Holdings executed a subsequent listing agreement with Robert Roberts and Mayo & Associates for the sale of the Properties or that Roberts and Mayo & Associates are not duly licensed real estate brokers. Regardless of any relationship between Appellees and Roberts, the subsequent listing agreement was bona fide as it was entered into with licensed real estate brokers, without any fraud or deceit, in clear compliance with the terms of the Listing Agreement drafted by Appellants. The trial court properly interpreted the Listing Agreement pursuant to Ohio law, construing any ambiguity against Appellants.

**{¶29}** Appellants' second assignment of error is without merit.

## CONCLUSION

{¶30} For the foregoing reasons, Appellants' assignments of error are not well-taken. The October 15, 2025 judgment of the Mahoning County Court of Common Pleas adopting the magistrate's decision denying Appellants' motion for summary judgment and granting Appellees' cross-motion for summary judgment is affirmed.

Waite, P.J., concurs.

Robb, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**NOTICE TO COUNSEL**

**This document constitutes a final judgment entry.**